100 So.2d 157 (1958)
Abraham A. ZALKA, Appellant,
v.
Rose Levin ZALKA, Appellee.
Supreme Court of Florida.
January 22, 1958.
Rehearing Denied February 27, 1958.
*158 Ferrell & Young, Miami, for appellant.
Marx M. Faber, Miami, for appellee.
ROBERTS, Justice.
We here review a declaratory decree entered by the lower court interpreting a 1946 divorce decree as to its provisions for support. The 1946 decree granted to the appellee wife a divorce on the ground of desertion, awarded to her the custody of the two children of the parties  a daughter aged 17 and a son aged 11  and required the appellant husband to pay to the appellee "as alimony and maintenance for the said minor children" the sum of $50 per week "until Saul Zalka, the Son of the parties hereto, shall have reached the age of Twenty-One (21) years, or until the death or remarriage of the plaintiff, Rose Levin Zalka."
In November of 1955 the son attained his majority and the appellant declined to make any further payments of alimony or support money to the appellee. This suit for a decree declaratory of her right to continue to receive alimony under the divorce decree, and for alternative relief, was then filed by appellee. The Chancellor construed the decree as providing "that the alimony payments of $50 per week to the wife should continue until the death or remarriage of the wife, and that said payments are not terminated by the son's reaching his majority," and so adjudicated. The declaratory decree also directed the appellant to pay to the appellee $1,200 representing delinquent alimony payments since November 16, 1955. It is this decree that we review on appeal by the appellant husband
When the construction of a decree in equity is brought into question, it is the duty of the court to construe it "so as to *159 make it correct and proper with reference to the pleadings and entire proceedings in the case." Young v. Miami Beach Improvement Co., Fla. 1950, 46 So.2d 26, 29. Accord: Pearson v. Helvenston, 1905, 50 Fla. 590, 39 So. 695; Hanna v. Martin, Fla. 1951, 49 So.2d 585.
In her complaint in the divorce suit the appellee prayed that the appellant be required "to provide for the support and maintenance of the Plaintiff and the two minor children in accordance with the terms of the agreement heretofore entered into by the parties * * *" The testimony in the divorce suit showed and the Special Master found that the parties had agreed upon the amount to be paid to appellee as support for herself and the two children, to wit, a lump sum of $2,500 and the further sum of $50 per week. It also appeared that their agreement (which was apparently oral, since it was not introduced in evidence) was supported by an escrow guarantee agreement under which the appellant deposited ten $1,000 negotiable bonds with a bank, as escrow agent, conditioned upon the faithful performance of the provisions of the divorce decree requiring him to support and maintain the plaintiff and the minor children. The escrow letter provided that, upon 30 days' default by appellant in making the alimony and maintenance payments to be decreed by the court, the bank should deliver the bonds to the appellee; and in the event of the death or remarriage of the appellee, the bonds should be delivered to the appellant. The escrow letter also directed the bank to deliver one-half of the bonds to the appellant and one-half to the appellee upon the son's reaching the age of twenty-one, provided the appellee was living and had not re-married. This was done by the bank. But the divorce decree specifically provided that any sums paid to the appellee or bonds delivered to her by virtue of the escrow agreement "be, and the same is, or are, hereby decreed to be payments or deliveries of bonds or property in addition to the amount awarded the plaintiff [appellee] as alimony and maintenance in this decree, and shall in no event affect the provisions or orders of this decree concerning the payment of maintenance and alimony, such a payment or delivery from said escrow in no manner affecting the decree."
There is nothing in the testimony concerning the parties' oral agreement for alimony and child support that indicates that the parties intended that the appellee's alimony should stop when her son became twenty-one years of age. And, as noted, the Chancellor disavowed any intention of incorporating the terms of the escrow guarantee agreement into his decree. The record in the divorce proceeding, which was not contested by the appellant, reveals that appellant deserted the appellee without cause, and that appellee had devoted her efforts during the marriage to making a home for appellant and the children and was, presumably, not trained for any other occupation than homemaker. She was clearly entitled to alimony in some amount; and no valid reason for limiting her alimony to a nine-year period (the son was almost twelve years of age at the time of the divorce) can be gleaned from the record. Cf. Williamson v. Williamson, 1945, 156 Fla. 89, 22 So.2d 578; Knox v. Knox, 1947, 159 Fla. 123, 31 So.2d 159.
By its terms, the support provision of the decree was for the benefit of both the appellee and the children and not for the benefit of the children alone. The able Chancellor followed the oral agreement of the parties in providing for an undivided sum of $50 weekly for both alimony and support for the children. Such undivided awards of alimony and child support are not void, see Ciallella v. Ciallella, 1954, 81 R.I. 320, 103 A.2d 77; Hutson v. Hutson, Ohio App. 1954, 128 N.E.2d 673; cases collected in the annotation in 124 A.L.R. 1324, cf. Sheppard v. Sheppard, Fla. 1950, 45 So.2d 505; although either party could apply at any time for an allocation of a specific amount for alimony and for child support. Bezanilla v. Bezanilla, Fla. 1953, 65 So.2d 754. The remarriage of the wife *160 during the minority of the children, or the attainment of their majority by the children where the wife remains unmarried, does not terminate entirely the obligation of the former husband and father under such an undivided award, see Anderson v. Anderson, 1955, 129 Cal. App.2d 403, 276 P.2d 862; Hopkins v. Hopkins, 1956, 46 Cal.2d 313, 294 P.2d 1; Gilbert v. Hayward, 1914, 37 R.I. 303, 92 A. 625; Ciallella v. Ciallella, supra, 103 A.2d 77; the occurrence of either of these events will, however, ordinarily entitle the former husband and father to apply for and obtain an allocation of and a reduction in the amount specified by an undivided award for alimony and child support. Davis v. Davis, 1938, 68 App.D.C. 240, 96 F.2d 512; Evans v. Evans, 1921, 116 Wash. 460, 199 P. 764; Despain v. Despain, 1956, 78 Idaho 185, 300 P.2d 500; Anderson v. Mart, 1956, 47 Cal.2d 274, 303 P.2d 539; Keith v. Keith, 270 Ky. 655, 110 S.W.2d 424; Meek v. Meek, 1942, 51 Cal. App.2d 492, 125 P.2d 117; Putnam v. Putnam, 1942, 51 Cal. App.2d 696, 125 P.2d 525; cases collected in 18 A.L.R.2d at pp. 83 et seq.; but see Welton v. Welton, 1940, 260 App. Div. 876, 22 N.Y.S.2d 909; Sloan v. Sloan, 1955, 286 App.Div. 1102, 145 N.Y.S.2d 797; Barker v. Barker, Sup. 1943, 45 N.Y.S.2d 809.
It cannot reasonably be contended that, by specifying in the decree that the alimony and support payments were to be made until the son reached the age of twenty-one "or until the death or remarriage of the plaintiff," the Chancellor intended to absolve the appellant, if the appellee remarried, from his continuing duty to support his minor children during their minority. Cf. Bezanilla v. Bezanilla, Fla. 1953, 65 So.2d 754; Perla v. Perla, Fla. 1952, 58 So.2d 689; Sanders v. Sanders, 1956, 230 S.C. 263, 95 S.E.2d 440. Yet this would be the effect of the construction here contended for by appellant. By the same token, we do not think the Chancellor intended, by the provision in question, to absolve the appellant from his obligation to support his former wife, the appellee, merely because the children attained their majority.
When considered in the light of the entire proceedings, the only reasonable interpretation of the provision in question is that the Chancellor intended to provide that the right of the appellee to receive alimony would automatically terminate upon her remarriage, and her right to receive support money for the children would automatically terminate upon the son's attaining his majority. Since, as noted, both of these circumstances ordinarily justify a court in reducing the amount of an undivided award, even though not specifically provided by the decree, the inclusion of such a provision in the decree is important only to the question of whether the court, upon a petition for allocation and reduction by the husband and father, may validly reduce an undivided award as of the date of the occurrence of the wife's remarriage or the child's reaching his majority, rather than as of the date of the filing of the petition for allocation and reduction or the entry of the order of modification. Since there is a decided conflict among courts of other jurisdictions on this question, see Bean v. Bean, R.I. 1957, 134 A.2d 146; Austad v. Austad, 1954, 2 Utah 2d 49, 269 P.2d 284, 48 A.L.R.2d 256; cases collected in annotation in 6 A.L.R.2d 1277, and since this court has not squarely decided the question, the Chancellor must have intended only to avoid a controversy between the parties on this question by resolving it in his divorce decree.
For the reasons stated, the learned Chancellor was eminently correct in finding that the appellee was entitled to receive alimony after the son reached his majority, and this portion of the decree is affirmed; but we find no justification for concluding, as a matter of law, that she was entitled to receive, as alimony, the whole amount of the undivided award made by the divorce decree for alimony and child support, so this portion of the decree must be reversed.
No payments having been made by the husband since November, 1955, such modification, *161 as the exigencies of the situation may require or permit, should be made effective as of the date of the son's majority.
Accordingly, the decree here reviewed is affirmed in part and reversed in part, and the cause remanded for further proceedings not inconsistent with the opinions herein expressed.
TERRELL, C.J., and DREW, THORNAL and O'CONNELL, JJ., concur.